## RAND COWART v. STATE.

No. A-93.   Opinion Filed November 21, 1910.

1.   GRAND JURY—Qualifications—Challenge. During the impaneling of the grand jury the defendant interposed a challenge to one of the persons drawn and summoned as a grand juror on the ground that he had been a witness against the defendant in the latter's preliminary trial and had been subpoenaed by the state as a witness against the defendant on the same charge before the grand jury; and the county attorney admitted the truth of the facts stated. Held, that the juror was disqualified and the defendant's challenge should have been sustained.

2.   APPEAL—Record—Challenge to Grand Juror—Exceptions. Before the action of the court in erroneously overruling a challenge to a person drawn and summoned as a grand juror can be availed of on appeal, the case-made or bill of exceptions must affirmatively show that the objectionable person was finally accepted and impaneled as a grand juror, that he was a member of the grand jury which returned the indictment, that the defendant before entering his plea filed a motion to set aside the indictment on that specific ground, and that the motion was overruled and the defendant excepted.

3.   JUDGES—Judges Pro Tempore — Constitutional Law. That portion of sec. 9, art. 10, of the Constitution providing for the election of district judges pro tempore is not self-executing.

4.   SAME—Selection by Chief Justice. Prior to the passage of the act approved March 22, 1909, (art. 6, chap. 24, Snyder's Comp. Laws) where the district judge was disqualified to try a criminal case, and the state and the defendant did not agree upon a judge pro tempore for the trial of the case, a judge could be

supplied only by the Chief Justice assigning some other district judge to try the case.

5. SAME—Election by Bar—Validity. Prior to the passage of the act approved March 22, 1909, (art. 6, chap. 24, Snyder's Comp. Laws) no provision having been made by law whereby a judge pro tempore could be elected in the event of the disqualification of the regular judge, a special judge elected by the members of the bar over the defendant's objection was not a judge either dejure or de facto, and a trial had before him was a nullity.

(Syllabus by the Court.)

*Appeal from the District Court of Pottawatomie County; J. H. Woods, Special Judge.*

Rand Cowart was indicted for murder, and was convicted of manslaughter in the second degree. Reversed and remanded.

*B. B. Blakeney,* and *J. H. Maxey,* for plaintiff in error.—On question whether sec. 9, art. 10, Const. is self-executing: Cooley, Const. Lim. (7th Ed.) p. 127; *Railroad Co. v. Lawrence County,* 27 Ill. 50; *Long v. Billings,* 7 Wash. 267; *French v. Teschemaker,* 24 Cal. 518; *Railroad Co. v. Fire Ass'n Phila.,* 60 Ark. 325.

*Chas. West.* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.—On same question: *Davis v. Burke,* 179 U. S. 403; *State v. Holmes* (Wash.) 40 Pac. 736; *Parker Co. v. Jackson,* 5 Tex. Civ. App. 37; *Trigg v. State,* 49 Tex. 645; *Railroad Co. v. State Board of Equalization,* 64 Mo. 304.

RICHARDSON, JUDGE. During the impaneling of the grand jury which returned the indictment in this case, plaintiff in error interposed a challenge to one F. E. Romberg, who was drawn and summoned as a grand juror, on the statutory ground that Romberg had testified as a witness for the state in plaintiff in error's examining trial and was under subpoena by the state as a witness against plaintiff in error before the grand jury. The county attorney admitted the truth of the facts alleged, but the court for some reason overruled the challenge; and this is assigned as error.

The case-made does not contain the record of the impaneling

of the grand jury, nor does it show the names of the grand jurors who were finally accepted, impaneled and sworn. While it shows that the court erroneously overruled the challenge to this juror, still it does not show, and we do not know, that this juror was finally called and impaneled, and that he served as a juror in the investigation of this charge. The record shows that thirty jurors were drawn and summoned from which to impanel the grand jury; and notwithstanding the court overruled plaintiff in error's challenge, still it may be that the objectionable juror was not one of the number, then consisting of not less than twelve nor more than sixteen jurors, who were finally called from the thirty and impaneled and sworn. And from the state of the record and the very guarded manner in which the matter is stated in plaintiff in error's brief, we are constrained to believe that this juror did not in fact serve on this jury. The mere showing of a challenge to a juror, though well taken and overruled, is not a sufficient showing of prejudice. On the contrary, the record must affirmatively show that the juror was impaneled and that he in fact served in that particular case; and in addition to that, it must also show that the defendant, before entering his plea, filed a motion to set aside the indictment on that ground, that the motion was overruled, and that the defendant excepted; none of which matters are shown in this case.

Section 6658 of Snyder's Comp. Laws provides that a challenge to an individual grand juror may be interposed by either party on the ground that he is a witness for the prosecution and has been served with process as such. Under this provision the challenge to the juror Romberg was good, and should have been sustained. And an indictment returned by a grand jury having as one of its members a disqualified person who was thus duly and seasonably challenged cannot be said to have been "found * * * as prescribed by the statutes of the state"; and this, by section 6738 of Snyder's Comp. Laws, is declared a ground for setting aside the indictment. Section 6739 provides, however, that if the

motion to set aside the indictment be not made, the defendant is precluded from afterwards taking the objection. Therefore, plaintiff in error having failed to file such motion, the error of the court in overruling the challenge to the objectionable juror, even if he in fact served, was waived. That this is so must be apparent from the fact that should this court sustain plaintiff in error's contention, the error complained of would be as available on another appeal as on this one if the cause were again tried on this indictment, and it could be cured only by setting aside the indictment, and resubmitting the matter to a competent grand jury; and that being true, then a motion to set aside the indictment on that ground was necessary. Certainly it was proper for plaintiff in error to challenge the juror; for that laid the predicate for a subsequent motion to set aside the indictment, without which such a motion must have been overruled. *Fooshee v. State,* 3 Okla. Cr. 666, 108 Pac. 554. And having duly and seasonably interposed the challenge, had the disqualified juror served, and had plaintiff in error subsequently filed a motion to set aside the indictment on that ground, and had the motion been overruled, then the action of the court in overruling such motion would have constituted reversible error. As it is, however, if the juror in fact served on this grand jury, which the record does not show, the plaintiff in error must be held to have waived his objection to him.

When the cause came on for trial plaintiff in error filed an affidavit averring that the presiding judge of that judicial district was prejudiced against him, and by reason thereof would not give him a fair and impartial trial, and praying a change of judge. This was granted, and the presiding judge thereupon ordered that a special judge for the trial of this case be elected by the members of the bar present, under section 9 of article 7 of the Constitution. Accordingly an election was then and there held, resulting in the selection of Honorable J. H. Woods as judge *pro tempore* for the trial of this case. Plaintiff in error objected to the election of a special judge, and his attorneys refused to participate therein;

and when Judge Woods assumed the bench and called the case, plaintiff in error entered an objection to the trial being had before him, but the objection was overruled. This was before the passage of the act approved March 22, 1909, (art. 6, chap. 24, Snyder's Comp. Laws), prescribing the procedure governing the conduct of such elections; and it was urged both here and below that the constitutional provision authorizing an election in such cases is not self-executing, and that unless the parties should agree upon a judge *pro tempore,* then it devolved upon the Chief Justice of the Supreme Court to designate some other district judge to try the case. We think the contention sound, and that plaintiff in error's objection should have been sustained. The constitutional provision is as follows:

"In the event any judge shall be disqualified for any reason from trying any case in his district, the parties to such case may agree upon a judge *pro tempore* to try the same, and if such parties cannot agree, at the request of either party a judge *pro tempore* may be elected by the members of the bar of the district, present at such term. If no election for judge *pro tempore* shall be had, the Chief Justice of the state shall designate some other district judge to try such case."

In our opinion the holding of such an election necessitates the provision of some method of voting, of canvassing and tabulating the votes cast, and of declaring and recording the result; and the votes must be canvassed and the result determined and declared by some person or persons designated by law. Provision must be made for the time and place of holding the election, and the notice to be given thereof; and some one must be vested with authority to determine who is entitled to vote in such election. But the Constitution makes provision for none of these matters. It merely declares that at the request of either party a judge *pro tempore* may be elected. It does not provide the machinery or procedure for holding the election. It contains no provision for notice to the bar or any other person of the time and place of holding it; no provision insuring its fairness, regularity and le-

gality; no provision insuring the correct declaration of the result. No record is required to be made or kept, and no person is authorized or empowered to determine and declare the result. Without a requirement of notice that such an election is to be held and the time thereof, with no method of voting provided for, with no person designated to conduct the election and to pass upon and determine the right of any person to vote therein, no one authorized to declare the result, no record required to be made, no minimum limit as to the number whose participation may constitute an election, no provision as to whether a mere plurality or a majority vote is required to elect, and no restrictions upon the right of the interested attorneys to participate therein, all sorts of fraud and wrongdoing could easily be perpetrated in an attempted election, and the appellate court could have no means of telling and no rule for determining whether the election was fairly, honestly and legally conducted, and whether the person who presided as special judge in the trial was in fact elected. An unseemly scramble for advantage in the election might easily ensue; and one side or the other, by employing three or four attorneys, might by their votes control the election and place on the bench as special judge an unfit, incompetent or partisan person. In our opinion, by every declared test, this provision is not self-executing. It grants the power and creates the right to elect a special judge, but it provides no means or procedure by which the power may be exercised or the right enforced or protected; and the provision of such means and procedure is necessary to give it effect. *Ex parte Wagner,* 1 Okla. Cr. 148, 21 Okla. 33, 95 Pac. 435. It is probable that had the defendant and the state each consented or agreed to such an election, or participated therein without entering an objection, that might be held to be an agreeing upon a judge *pro tempore* within the meaning of the Constitution; that is, it might be held to be an agreement that such person as might be thus designated should be the judge *pro tempore.* But no such question arises in this case, for plaintiff in error specifically objected

to holding the election and refused to participate therein; and the judge *pro tempore* then and there elected was without right or power to try the case. As we view the matter, there being no agreement upon a judge *pro tempore* to try the case as provided by the Constitution, and no provision made by law whereby an election could be held, Judge Woods was not a judge either *de jure* or *de facto,* and the trial was a nullity and the judgment void.

There are other assignments of error, but inasmuch as the proceedings were wholly void, we shall not review them. Let the void judgment be set aside, and the plaintiff in error placed upon trial *coram judice.*

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.