[Crim. No. 2321.  First Dist., Div. Two.  Sept. 7, 1944.]

In re KATHERINE CARR, on Habeas Corpus.

682

Peter T. Rice for Petitioner.

Anthony Brazil, District Attorney (Monterey County), and Clark S. Gregory, Deputy District Attorney, for Respondent.

NOURSE, P. J.—In this proceeding in habeas corpus the petitioner seeks her release from an order of the Juvenile Court in Monterey County entered July 11, 1944, committing her to the custody of the sheriff of the county until she obeys an order of June 20, 1944, directing her to produce her minor child, Barbara, in court on June 28, 1944. The order of June 20th was made in open court, the petitioner then being present in court and represented by counsel.

The grounds upon which the petitioner seeks her release are: (1) That the Juvenile Court of Monterey County had no jurisdiction to hear the matter or to make the order of commitment because of the proceedings in Los Angeles County wherein the petitioner was named guardian of the minor. (2) That the failure of petitioner to bring the child into court on June 28th does not constitute contempt in the presence of

the court, and that the subsequent proceeding adjudging her guilty of contempt should have been initiated by an affidavit upon which the petitioner was entitled to be heard.

The facts are not in dispute. On July 14, 1941, the minor was declared a ward of the Juvenile Court in the County of Monterey, and its custody was awarded to the mother, the petitioner herein. On July 21, 1941, all the parties and counsel being present in court, this order was modified to the extent that the custody of the minor was awarded to the father. On December 7, 1943, upon motion of the mother the order of July 21, 1941, was vacated and custody of the child awarded to the mother. This order vacated all orders theretofore made inconsistent therewith and directed that the mother should not remove the child from the county of Los Angeles without the consent of the court, and stated that the court was ready to transfer the minor and the proceedings to the court of Los Angeles County if proper motion should be made. It does not appear that such motion was made, but the mother took the child to the county of Los Angeles and was residing therein on November 29, 1943, when the father filed a petition in the probate court in Los Angeles County asking guardianship and custody of the child. Judgment in that proceeding was entered May 29, 1944, awarding custody of the minor to the mother and directing that it should not be removed from the county of Los Angeles unless by order of the court. On May 23, 1944, the father filed a petition in the juvenile court in Monterey County asking a modification of the orders theretofore made and asking that the custody of the child be awarded to him. The mother was cited to appear in court and bring the minor with her. Several hearings were held upon this petition and continuances granted at the request of the mother, and on these occasions she was directed to produce the child in court and neglected to do so. The proceedings terminated in the order of June 30, 1944, which released the custody and control of the minor to the father under the supervision of the juvenile court, and directed that the minor should not be removed from the county of Monterey without the consent of the court.

(1) The jurisdiction of the Juvenile Court of Monterey County arises from the provisions of section 721 of the Welfare and Institutions Code which permit the filing of a peti-

tion stating that a minor residing in the county comes within the provisions of section 700 or 701 of the code, and praying that the court take appropriate proceedings to declare the minor a ward of the juvenile court to be dealt with in the manner provided in the code. Section 750 declares that when a minor has thus been made a ward of the juvenile court such court retains jurisdiction over the ward during minority or until such jurisdiction is released by appropriate order. It is argued by petitioner herein that the order of December 7, 1943, awarding custody of the minor to her and permitting her to remove it to the county of Los Angeles was a release of the jurisdiction of the juvenile court in Monterey County, and that neither the petitioner nor the minor were thereafter subject to the jurisdiction and orders of the juvenile court in Monterey County until the minor became a resident of the latter county and proceedings were instituted under sections 721 et seq. of the Welfare and Institutions Code. The argument is based upon the portion of the order vacating all orders theretofore made. On June 29, 1944, this order was amended *nunc pro tunc* as of December 7, 1943, by inserting the words "inconsistent herewith," and the order stated that the minute order of December 7, 1943, did not convey the true meaning of the court. ■ When the question of the meaning and effect of a judgment or order is raised, the entire document is to be construed as a whole to determine the purpose and intent, just as in a case of a contract or other document. (*Lazar* v. *Superior Court*, 16 Cal.2d 617, 622 [107 P.2d 249].) ■ Examining the order of December 7, 1943, in this light it will be noted that it does not appear that any motion was made specifically affecting the order of July 14, 1941, declaring the minor a ward of the juvenile court. The proceedings seem to have been started by a motion of the mother to set aside an order of July 21, 1941, which awarded the custody of the minor to the father. This motion was granted and it would appear that the orders which the court had in mind to vacate were the orders relating to the custody only. This is further indicated by the concluding paragraph of the order which expressed a willingness to transfer the child and the proceedings to Los Angeles County if such a motion were made. If the court had intended by this order to release the child from the jurisdiction of the juvenile court there would have been no purpose in stating that it

was prepared to transfer the child and the proceedings to Los Angeles County.

It may be conceded that the proceedings in the juvenile court did not bar the mother from proceeding in the probate court in Los Angeles County for letters of guardianship of the person and estate of the minor. This right is expressly conferred by section 1440 of the Probate Code. (*Guardianship of Phillips*, 60 Cal.App.2d 832, 834 [141 P.2d 773]. But this does not affect the jurisdiction of the juvenile court in Monterey County since under the provisions of section 700 of the Welfare and Institutions Code the juvenile court may remove a minor from the custody of its guardian as well as of its parent. A somewhat similar case is *Smith* v. *Smith*, 31 Cal.App.2d 272 [87 P.2d 863], where it was said that the jurisdiction of the juvenile court of a delinquent or dependent child was not lost by a subsequent award of the custody made in a divorce proceeding. A similar holding is *In Re Hosford*, 107 Kan. 115 [190 P. 765, 11 A.L.R. 142], which is carefully annotated in 11 A.L.R. p. 147.

(2) Whether the failure of petitioner to bring the child into court as ordered constituted a direct or constructive contempt has not been directly decided. In *Phillips* v. *Superior Court*, 22 Cal.2d 256 [138 P.2d 838], an analysis is made of the requirements of an affidavit charging contempt for failure to obey a somewhat similar order. But in that case the contempt charged the failure to obey an order of court directing the mother to deliver custody of the minor to its grandmother. This appears to have been a part of the decree of divorce which presumably was served upon the mother, but it does not appear that the order was made in open court or that she was present in court when it was made. In *Paddon* v. *Superior Court*, 65 Cal.App. 34 [223 P. 91], the petitioner was directed to appear in court in response to a subpoena and give his deposition. He failed to appear but through counsel filed an affidavit claiming he was beyond the jurisdiction of the court, and this was held direct contempt. In *In re Mason*, 69 Cal.App 598 [232 P. 157], the contemner, an administrator of an estate, was ordered to show cause why he should not file his account and be discharged from his office. Upon the hearing of the order to show cause the court ordered that he be discharged as administrator and, in open court ordered that he deliver all the property to his successor and render

a full account. He was adjudged guilty of contempt for failure to comply with this order and was summarily punished.

In *Bridges* v. *Superior Court,* 14 Cal.2d 464, 507 [94 P.2d 983], the dissenting opinion cites the Mason case as one of direct contempt. In *Smythe* v. *Smythe,* 28 Okla. 266 [114 P. 257], the failure of a father to comply with an order to produce a child in court in a proceeding brought by the mother was characterized as direct contempt. In *Ex parte Sternes,* 77 Cal. 156 [19 P. 275, 11 Am.St.Rep. 251], a sheriff was directed to produce a prisoner in court in response to a writ of habeas corpus issued at the instance of the prisoner. He failed to produce the prisoner at the time directed, having delivered him into the possession of a sheriff of an adjoining county after service of the writ upon him. His failure to comply with the order was found to be contemptuous, and he was adjudged guilty, no warrant of attachment or order to show cause having been issued before the adjudication. Upon the hearing of his petition the Supreme Court rejected his contention that the act complained of was not a direct contempt, saying: (p. 163)

"The failure of Sternes to produce the body of Ah Fong, as the court found he had the power to do, before the court, in obedience to the writ, was a contempt committed in the face of the court, and no affidavit of the facts constituting the contempt was necessary to give the court knowledge thereof. (*In re Robb,* 64 Cal. 431 [1 P. 881]) An order to show cause or notice of a motion for an attachment would not have served Sternes any useful purpose." The court then commented upon the limitation for a review of proceedings of this kind and the severity of the power to punish for contempt, and though we were to agree that such is the case here nevertheless it is not the province of an appellate court to review the exercise of the discretion of the respondent court in this type of proceeding. As in the case just cited, the petitioner had an opportunity before the order was made to explain the reasons of her failure to obey the order, and the court therefore must have believed that a further hearing on that subject would serve no purpose.

For the reasons stated the petitioner is remanded and the writ discharged.

Spence, J., and Goodell, J. pro tem., concurred.